IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DONNA M. F., | § | |
|     PLAINTIFF, | § | |
| | § | |
| V. | § | CASE NO. 3:18-CV-1806-BK |
| | § | |
| NANCY A. BERRYHILL | § | |
| ACTING COMMISSIONER OF SOCIAL | § | |
| SECURITY ADMINISTRATION, | § | |
| | § | |
|     DEFENDANT. | § | |

**MEMORANDUM OPINION**

Before the Court are the parties' cross-motions for summary judgment. For the reasons that follow, Plaintiff's *Motion for Summary Judgment*, Doc. 18, is **DENIED**, Defendant's *Motion for Summary Judgment*, Doc. 19, is **GRANTED**, and the Commissioner's decision is **AFFIRMED**.

**I.
BACKGROUND**

**A.    Procedural History**

Plaintiff seeks judicial review of a final decision by the Commissioner denying her application for disability benefits under the Social Security Act ("the Act"). Doc. 1 at 1. After Plaintiff's claims were denied at all administrative levels, she appealed to this Court pursuant to 42 U.S.C. § 405(g); Doc. 18-1 at 1-2.

**B.    Factual Background**

Plaintiff filed for benefits in September 2015 claiming that she became disabled in October 2014 due to her uncontrolled diabetes, neuropathy, collagenous colitis, arthritis, and

vision impairment. Doc. 1 at 1-2; 18-1 at 1, 6. She was 49 years old on her alleged disability onset date. Doc. 13-1 at 27.

### 1. Diabetes and Collagenous Colitis

During a medical visit in August 2015, Plaintiff requested refills for diabetes medication she had not taken in two years and was diagnosed with type II, uncontrolled diabetes. Doc. 13-1 at 378, 381. In September 2015, Plaintiff's insulin and gabapentin doses were increased, and she received diet and nutrition counseling. Doc. 13-1 at 311. Plaintiff exhibited normal bowel sounds. Doc. 13-1 at 310.

Plaintiff later suffered from a three-month bout of diarrhea and vomiting, likely the result of hyperglycemia, that resulted in hospitalizations in November and December of 2015. Doc. 13-1 at 343, 360. During a January 24, 2017 hospitalization, Plaintiff was again hyperglycemic and not compliant with taking her medication. Doc. 13-1 at 758. Plaintiff's blood glucose level upon admission was 863. Doc. 13-1 at 766.

### 2. Ocular

On November 16, 2015, Plaintiff underwent a visual consultative examination with Dr. Celico. Doc. 13-1 at 334-35. Dr. Celico noted that Plaintiff had no neovascular disease and normal visual field in both eyes. Doc. 13-1 at 335. Plaintiff's vision for distance was 20/40 in her right eye and 20/80 in her left eye with best correction. Doc. 13-1 at 334. Plaintiff's near vision was 20/200 with her right eye and 20/250 with her left eye with best correction. Doc. 13-1 at 334. Dr. Celico predicted Plaintiff's future health would be fair to good. Doc. 13-1 at 335. Plaintiff was not taking any ocular medications. Doc. 13-1 at 479.

### 3. Arthritis/Muscular

The August 1, 2015 treatment notes reveal that Plaintiff's neck was supple, she had a normal range of motion, and she had neither back pain nor neck stiffness. Doc. 13-1 at 316. Plaintiff denied having pain and stated her pain level was zero out of ten. Doc. 13-1 at 315. Plaintiff reported a normal gait and station. Doc. 13-1 at 314. During the November and December 2015 hospitalizations, Plaintiff's neck was supple with a normal range of motion. Doc. 13-1 at 359, 362. During the January 24, 2017 hospitalization, Plaintiff again reported no back or neck pain. Doc. 13-1 at 759.

### 4. Neuropathy

The August 26, 2015 treatment notes reveal that while Plaintiff complained of hand numbness, she refused an OT referral. Doc. 13-1 at 312. Plaintiff was diagnosed with polyneuropathy. Doc. 13-1 at 313.

### 5. Hearing Testimony

In February 2017, a hearing was held before an Administrative Law Judge ("ALJ"), at which, Plaintiff testified that she completed high school, and had past work experience as a manager for U-Haul. Doc. 13-1 at 35, 41. She averred that she has about three good days each week and, on her bad days, spends up to twelve hours in the bathroom due to her collagenous colitis. Doc. 13-1 at 43-44. Plaintiff also testified that she lives with her husband, mother, and mother-in-law and that she does not cook or do laundry, cannot dress herself or wipe tables for more than two or three minutes before needing a break, and only leaves the house about once a week. Doc. 13-1 at 51-53.

A Vocational Expert ("VE") testified to the exertional classifications of Plaintiff's past jobs as (1) manager of a U-Haul storage center – skilled and light exertional; and (2) retail

cashier – semi-skilled and light exertional. Doc. 13-1 at 57. Based on the hypothetical posed by the ALJ, the VE also testified that a person of Plaintiff's age and educational background, who was limited to light work and who could not read written instructions or prepare written reports, could not perform Plaintiff's past relevant work of manager and cashier, but could perform other work that existed in significant number in the national economy, including packer, hardware assembler, and wire sorter. Doc. 13-1 at 59-63.

### 6. ALJ's Opinion

The ALJ found that Plaintiff had severe impairments of diabetes mellitus, neuropathy, and cataracts, but that she did not have an impairment or combination of impairments that met or medically equaled any Listed Impairment. Doc. 13-1 at 23. The ALJ thus concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work that did not require her to read written instructions or write reports. Doc. 13-1 at 23. The ALJ also found that Plaintiff is able to (1) lift or carry twenty pounds on an occasional basis; (2) lift or carry ten pounds on a frequent basis; (3) walk or stand for six hours of an eight-hour workday with normal breaks; (4) sit for six hours of an eight-hour workday with normal breaks; and (5) push, pull, or operate hand or foot controls without limitation. Doc. 13-1 at 23. Based on this RFC, the ALJ conclude that while Plaintiff is unable to perform any past relevant work, she is able to perform jobs that exist in the national economy; thus, she was not disabled under the Act. Doc. 13-1 at 27-29.

## II.
## APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, she is "[unable] to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least twelve months. 42 U.S.C. §

423 (d)(1)(A). In determining whether an individual is disabled, the Commissioner uses a five-step inquiry: (1) an individual who is working and engaging in substantial gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the Regulations will be considered disabled without consideration of vocational factors; (4) if an individual is capable of performing her past work, a finding of "not disabled" must be made; and (5) if an individual's impairment precludes her from performing her past work, other factors including age, education, past work experience, and RFC must be considered to determine if any other work can be performed. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (per curium) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b)-(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* If the claimant satisfies her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant can perform. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Grid Rules, vocational expert testimony, or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

Judicial review of the Commissioner's decision is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan*, 38 F.3d at 236; 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is more than a scintilla, less than a preponderance, and is such

relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett*, 67 F.3d at 564. Under this standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

## III.
## ANALYSIS

In considering the parties' summary judgment arguments, the Court has relied upon their assessment of and citation to the evidence of record. The Court is not under any obligation to probe the record to find supporting evidence for one side or the other. *See* FED. R. CIV. P. 56 (the movant and opponent of a motion for summary judgment must support their positions by "citing to particular parts of materials in the record"); *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (the court has no obligation under Rule 56 "to sift through the record in search of evidence to support a party's opposition to summary judgment").

Plaintiff's primary arguments are: (1) "the record does not contain substantial evidence to support the ALJ's finding that Plaintiff is not disabled"; and (2) "the ALJ's finding that Plaintiff is not disabled is the result of legal error." Doc. 18-1 at 9. Defendant argues that the ALJ properly found that Plaintiff could perform a significant number of jobs in the national economy and that substantial evidence supports the ALJ's decision. Doc. 19-1 at 1.

Upon review, the Court finds that the ALJ's decision is supported by substantial evidence. The ALJ's analysis included a thorough discussion of all the evidence of record and a detailed application of the evidence to the relevant listings. Doc. 13-1 at 23-29. The ALJ discussed why it gave little weight to Plaintiff's subjective complaints that were not supported by the medical evidence. Doc. 13-1 at 24-29. As the ALJ noted, Plaintiff stated in her function report that she is unable to have eye surgery for her cataracts because she has uncontrolled

6

diabetes, Doc. 13-1 at 239; but later testified that she had four eye surgeries for cataracts that were all ineffective, Doc. 13-1 at 48. The ALJ noted that Plaintiff's medical records show no evidence of eye surgeries and concluded that Plaintiff's unexplained contradictions impacts her credibility. Doc. 13-1 at 26.

The ALJ also adequately explained why (to Plaintiff's benefit) he gave less weight to the RFC's of the two state consulting physicians, Dr. Spoor and Dr. Ward. Doc. 13-1 at 24. For example, Dr. Ward agreed with Dr. Spoor's conclusion that Plaintiff's physical impairments would limit Plaintiff's exertional range to *medium*, while Plaintiff's medical records were more consistent with a *light* exertional limit. *See* Doc. 13-1 at 24. Although not required to, the ALJ further considered Plaintiff's allegations of constant abdominal pain and diarrhea in determining her RFC, even though such symptoms "appear to result form her not taking her medication and allowing her blood glucose levels to reach a critical point." Doc. 13-1 at 25. *See Johnson v. Bowen*, 864 F.2d 340, 347 (5th Cir. 1988) ("If an impairment reasonably can be remedied or controlled by medication or therapy, it cannot serve as a basis for a finding of disability.").

Plaintiff's argument that the ALJ failed to properly develop the record fails because, as Defendant correctly notes, Plaintiff has not supported her claims with objective medical testimony. "[S]ubjective complaints must be corroborated at least in part by objective medical testimony." *Houston v. Sullivan*, 895 F.2d 1012, 1016 (5th Cir. 1989) (finding sufficient evidence to support ALJ's RFC determination when doctors concluded claimant's lung damage lacked sufficient severity to classify claimant as disabled). Here, rather than cite to any objective medical testimony supportive of her subjective complaints, Plaintiff instead reiterates her testimony February 2017 hearing testimony before the ALJ. *Compare* Doc. 18-1 at 6-7, *with* Doc. 13-1 at 43-54.

7

Plaintiff's reliance on *Williams v Astrue*, 355 F.App'x 828, 832 (5th Cir. 2009) is misplaced. In *Williams,* the Court found the ALJ erred in failing to give controlling weight to the plaintiff's treating physicians' opinions that she could not stand for six hours in an eight-hour workday, when there was no medical evidence to the contrary. *Id.* Here, however, there is no medical evidence whatsoever that Plaintiff *cannot* stand or sit for six hours in an eight-hour workday. As noted by the ALJ: "[Plaintiff's] medical records do not corroborate an inability to lift items, to get up and down, an inability to sit or stand for more than 30 minutes, or an inability to hold items and to dress." Doc. 13-1 at 25. Again, the ALJ was within his authority to discount Plaintiff's subjective complaints that were not supported by medical evidence.

Plaintiff's reliance on *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000) is also misplaced because, as Defendant correctly notes, the ALJ did not doubt the opinions of Plaintiff's treating physicians. In *Newton*, the Fifth Circuit reversed the lower court when "the ALJ summarily rejected the opinions of Newton's treating physician, based on the testimony of a non-specialty medical expert who had not examined the claimant." Unlike in *Newton*, nothing in the ALJ's findings in this case reflects that he rejected the opinions of Plaintiff's treating physicians. *See* Doc. 13-1 at 24-26 (ALJ's discussion of the medical evidence).

Plaintiff's argument that the ALJ cannot interpose his own medical expertise over that of a physician likewise fails. *See Taylor v. Astrue*, 706 F.3d 600, 602-03 (5th Cir. 2012) (per curiam) (rejecting plaintiff's argument that the ALJ substituted his opinion for that of the medical personnel who treated claimant when "[t]he record indicates that the ALJ used the medical information provided by [plaintiff] to determine the plaintiff's residual functional capacity for work . . . . What [plaintiff] characterizes as the ALJ substituting his opinion is actually the ALJ properly interpreting the medical evidence to determine his capacity for

work."). Like *Taylor*, the record in this case reflects that the ALJ used medical information provided by Plaintiff and Plaintiff's medical records to determine Plaintiff's RFC. Doc. 13-1 at 24-29.

Plaintiff's argument that the ALJ cherry-picked evidence rather than consider the entire record is belied by the record. Again, Plaintiff relies only on the testimony of her subjective complaints during the administrative hearing rather than any medical evidence of record. *Compare* Doc. 18-1 at 6-7, *with* Doc. 13-1 at 43-54. As discussed previously, the ALJ considered *both* Plaintiff's subjective complaints and the objective medical evidence to determine Plaintiff's RFC. *See Taylor*, F.3d at 602-03 ("the determination of residual functional capacity is the sole responsibility of the ALJ. What [plaintiff] characterizes as the ALJ substituting his opinion is actually the ALJ properly interpreting the medical evidence to determine his capacity for work"); Doc. 13-1 at 24-30.

Lastly, Plaintiff's argument that the ALJ's decision constitutes legal error and an abuse of discretion fails because Plaintiff reiterates the same arguments underlying her lack of substantial evidence allegations. For example, Plaintiff asserts—without analysis or explanation—that the ALJ's decision results from legal error. *See* Doc. 18-1 at 3-4, 9. Defendant correctly notes that "Plaintiff does not actually demonstrate that the ALJ committed an error of law . . . . Rather, in disagreeing with the ALJ's finding, Plaintiff merely claims that the ALJ failed to properly develop the record and failed to properly consider her complaint, thus claiming that this is legal error." Doc. 19-1 at 8. As detailed above, the ALJ's decision is supported by substantial evidence; therefore, Plaintiff's legal error and abuse of discretion arguments fail.

# IV.
# CONCLUSION

For the foregoing reasons, *Plaintiff's Motion for Summary Judgment*, Doc. 18, is **DENIED**, Defendant's *Motion for Summary Judgment*, Doc. 19, is **GRANTED**, and the Commissioner's decision is **AFFIRMED**.

**SO ORDERED**, September 6, 2019.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE